## WILLIAM RANDOLPH FREY AND GEORGE EDWARD PEYTON *v.* STATE OF MARYLAND

[No. 83, September Term, 1967.]

40

*Decided January 31, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Claude A. Hanley* for appellant Frey and *Nelson W. Gatton* for appellant Peyton.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County, L. Robert Evans, Deputy State's Attorney for Baltimore County,* and *Charles E. Foos, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellants, William Frey and George Peyton, together with a co-defendant, James Peyton, were jointly indicted under two separate indictments, charging (together with allied counts) (a) breaking the dwelling of Louis J. Barry on March 22, 1966 with intent to steal, and (b) breaking the storehouse of Everett Smith on April 7, 1966 with intent to steal. The court, sitting without a jury, (Maguire, J. in the Circuit Court for Baltimore County) convicted appellants of housebreaking

under the Barry indictment, and storehousebreaking and grand larceny under the Smith indictment, and imposed sentences of five years on each count, to run concurrently. James Peyton was acquitted.

Appellants' principal contentions on this appeal are that there was no probable cause for the issuance of the search warrant pursuant to which their apartments were searched, and that, in any event, the warrant was illegal as constituting a general one prohibited by both the State and Federal Constitutions.

The evidence showed that on May 12, 1966, Corporal Maddox of the Baltimore County Police Department applied to a judge of the Supreme Bench of Baltimore City for a search warrant, outlining in his application and affidavit therefor, in considerable detail, these facts: that the affiant (Maddox) had met with the same informant on three separate occasions— April 16, April 25, and May 9, 1966; that the informant told him that the appellants, and John Peyton, had stolen a safe from the Oak Grove Apartment rental office, and another safe from the Julius Requard rental office in Dundalk, abandoning both safes in a wooded area, the location of which the informant designated; that the informant's information concerning the safe burglaries, together with the *modus operandi* of the crimes, correctly corresponded with police records; that one of the stolen safes was not recovered until the very day that the informant told the police where it could be located; that the informant told police that a "torch set" had been stolen in the Requard burglary which appellant Frey had given to him; that the informant gave the torch set to the police, which police verified as that stolen from Requard; that the informant told police that the appellants, together with John Peyton and William Wingate, had broken into the Sterling T.V. Shop on April 22, 1966; that the police verified the occurrence of this crime, and learned that a 1958 Chevrolet, with Maine license plates, belonging to appellant Frey, was seen in close proximity to the burgled premises on the night of the crime, and that appellant Peyton, William Wingate, and John Peyton, were seen by police near the burgled premises at approximately the time the crime was committed; that the informant also stated that the appellants, together with John Peyton and William Wingate,

had also broken into a home at a location which he generally described, and stolen therefrom a number of articles, some of which he designated, and with respect thereto, stated that the stereophonic record player stolen in that burglary could be found in appellant Peyton's living room; that a portable television set so stolen was located in appellant Frey's apartment; that a transistor radio stolen in said burglary could be located in the apartment of John Peyton, and that a camera stolen in the burglary could be found in Wingate's apartment. The affidavit stated, in effect, that the police verified the fact that a burglary occurred in the general area described by the informant at the home of Louis Barry, and that articles were stolen therefrom of a description similar to that given by the informant.

The application for the search warrant recited that on the basis of the stated facts the affiant believed that the informant was reliable, and that articles stolen in the burglary of the Barry house "are presently located on the premises of 2008 East Pratt Street, and that the said premises has been kept, used and occupied by William Frey, William Wingate, George Peyton, and John Peyton * * *." On this information, the affiant requested a search and seizure warrant be issued authorizing him to "enter and search the said premises."

The search warrant was issued on May 12, 1966. It recited that there was probable cause to believe that a misdemeanor was being committed "on the premises known as 2008 East Pratt Street, a two-story brick apartment house, * * * the said premises being an apartment house." The affidavit of Maddox was included as a part of the search warrant. The warrant commanded the police, *inter alia*, "to enter and search the said premises" and "to seize all fruits and instrumentalities having to do with the larceny and receipt of the aforementioned stolen goods, believed ·by the affiant to be kept in Room #1 and Room #2 of 2008 East Pratt Street * * *."

On May 13, 1966, Corporal Maddox, together with an officer of the Police Department of Baltimore City, went to the apartment building at 2008 East Pratt Street to execute the search warrant. They first located appellant Frey's apartment, it being apartment #1 in the basement of the building. They read the search warrant to him and thereafter searched his apart-

ment, seizing numerous articles therefrom which had been stolen in the Barry burglary, as well as articles stolen at the time of the Smith storehousebreaking. The officers thereafter went to appellant Peyton's apartment, it being on the first floor in the rear of the building and designated apartment #2. They read the warrant to Mrs. Peyton, and thereafter seized the stereo record player, stolen from the Barry residence and specifically described in the warrant, as well as other articles stolen at the time of that burglary, together with a number of other items stolen during the Smith storehousebreaking.[1]

After searching the appellants' apartments, Maddox "went into" the other two apartments in the building looking for appellant Peyton and Wingate, a right which he thought he had under the warrant. He was given an electric toaster by the second floor tenant, a relative of the appellant Peyton's sister, who told him that the toaster had been obtained from appellant Frey. Neither the toaster nor any other evidence taken from other than the appellants' apartments were introduced in evidence at the trial. Maddox testified that in searching for the stolen property, the only apartments he considered were those occupied by the appellants.

The building landlord testified that there were four apartments in the building; that his tenants were "very transient," that they moved in and out, that a "whole gang" lived with appellant Peyton, including James Peyton and, while not clear from his testimony, possibly John Peyton. So interrelated were

---

1. The police did not recover the portable television set which the informant stated would be found in appellant Frey's apartment, and none of the articles stolen from the Smith storehousebreaking were described in the search warrant. The fact that the articles seized were not among those listed in the search warrant does not, of course, vitiate the warrant. While the general rule is that property other than that for which a search is being made under the authority of a search warrant cannot be seized where it does not come within the description of the warrant, *Brooks v. State*, 235 Md. 23, an exception to that rule exists where officers lawfully on the premises discover other property which they have reasonable cause to believe has been stolen. See *Anglin v. State*, 1 Md. App. 85. We think the exception to the rule is applicable under the facts of this case and appellants make no contention to the contrary.

the inhabitants of the building that during the trial they were referred to as residing in "Peyton Place."

Appellants' contention that there was no probable cause for the issuance of the search warrant is seemingly predicated on the premise that the affidavit was defective since it was based on information provided by an unidentified informant. That an affidavit may be based on hearsay information provided by an unidentified informant, and need not reflect the direct personal observations of the officer, is settled beyond question. *Aguilar v. Texas,* 378 U. S. 108; *Scott v. State,* 1 Md. App. 481. The probable cause necessary for the issuance of a search warrant requires a proper showing not only that a crime has been or is being committed, but also that the evidence of the crime is upon the person or within the place or thing to be searched. *Salmon v. State,* 2 Md. App. 513. It is thus essential that the magistrate to whom application is made for a search warrant be informed of some of the underlying circumstances from which the informer concluded that the crime was being or had been committed, and that, as here, the stolen goods could be found in a designated place; and, additionally, some of the underlying circumstances from which the officer concluded that the informer was credible or his information reliable. *Aguilar v. Texas, supra; Scott v. State, supra.* Thus, a general statement received from an unnamed informant, who is only alleged to be "considered reliable," without any reason given as to the basis of that conclusion, would not constitute probable cause for the issuance of the search warrant. See *Gatewood v. State,* 244 Md. 609.

Tested by these standards, and bearing in mind that the presence or absence of probable cause to support the search warrant must be determined solely from the allegations of the application for the warrant, *Henderson v. State,* 243 Md. 342; *Clayton v. State,* 1 Md. App. 500, we think it too clear to require discussion that sufficient underlying circumstances were set forth in the affidavit to demonstrate that the police could properly conclude that the informer was reliable. While the affidavit does not recite any particulars to show the basis or the source of the informer's knowledge of appellants' involvement in the burglaries, and there is no indication in the affi-

davit that the informer had, in fact, seen the specified stolen goods in appellants' apartments, or in the apartments of John Peyton or William Wingate (Cf. *Rugendorf v. United States,* 376 U. S. 528), we think, upon consideration of the entire affidavit that the informer's intimate knowledge of the criminal operations of the appellants and their companions in the commission of the crimes specified, including the Barry burglary, verified in part by the police, was such as to implicitly constitute a sufficient showing of underlying circumstances from which the informer concluded that certain of the stolen goods could be found in the designated apartments. In concluding that the warrant was issued upon sufficient probable cause, we are mindful of the observations so forcefully made by the Supreme Court in *United States v. Ventresca,* 380 U. S. 102, *viz.,* that the requirements of the Constitution are practical and not abstract, that search warrants must be tested and interpreted by magistrates and courts in "a commonsense and realistic fashion," that the preference to be accorded a warrant indicates that in a doubtful or marginal case a search under a warrant may be sustainable, where without one it would fail and that "a grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting," and finally that:

> "This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar v. Texas, supra* [378 U. S. 114, 12 L. Ed. 2d at 729]. Recital of some of the underlying circumstances in the affidavit is essential [as it is under the Maryland statute] if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit

> in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. *Jones v. United States, supra* at 270 [of 362 U. S.]."

Nor do we find merit in appellants' contention that the search warrant was invalid as constituting a general warrant. A general warrant, broadly defined, is one which fails to sufficiently specify the place or person to be searched or the things to be seized, and is illegal since, in effect, it authorizes a random or blanket search in the discretion of the police in violation of the Fourth Amendment to the Federal Constitution, Article 26 of the Maryland Declaration of Rights, and Section 551 of Article 27 of the Maryland Code (1967 Repl. Vol.), all of which require that search warrants particularly describe the place to be searched and the things to be seized, so as to prevent the search of one place, or the seizure of one thing, under a warrant authorizing search of another place, or the seizure of another thing. See *Stanford v. Texas,* 379 U. S. 476; *Salmon v. State, supra.*

That the warrant here involved sufficiently specified the stolen articles thought to be located in the apartments of the appellants, John Peyton and William Wingate, is entirely clear. And we think that the command of the search warrant to enter and search the two-story brick building at 2008 East Pratt Street, "the said premises being an apartment house," did not purport to authorize the search of the entire apartment house since the affidavit accompanying the warrant, and made a part thereof, particularly specified that the apartments to be searched were those occupied by the appellants Peyton, Frey, John Peyton and William Wingate. There is, of course, no formula which can be used to measure the particularity with which premises must be described in a search warrant, the adequacy of such description in every case necessarily depending on the facts and circumstances there present. *Tucker v. State,* 244 Md. 488, 496. A description of a place to be searched is ordinarily sufficient if

the officer with the warrant can, with reasonable effort, ascertain and identify the place intended. *Steele v. United States,* 267 U. S. 498; *Saunders v. State,* 199 Md. 568. In determining whether the description of the place to be searched meets these standards, it is permissible to look to the affidavit as well as the warrant since the affidavit is a part of the warrant and incorporated by reference therein. See *Fry v. United States,* 9 F. 2d 38 (9th Cir.); *People v. DeLago,* 266 N. Y. S. 2d 353; *Ellison v. State,* 212 S. W. 2d 387 (Tenn.); Varon, *Searches, Seizures and Immunities,* Vol. 1, p. 319.

Certainly, a designation in the affidavit of the apartments to be searched as those being occupied by the appellants, John Peyton and William Wingate, limited the "premises" to be searched to those occupied by these individuals and made clear that the entire building was not the subject of the warrant. So limited, the warrant sufficiently describes the places to be searched within constitutional and statutory requirements. See *Kenney v. United States,* 157 F. 2d 442 (App. D. C.); *Commonwealth v. Lillis,* 209 N. E. 2d 186 (Mass.); *People v. Estrada,* 44 Cal. Rptr. 165 (D. C., Calif.); *People v. Johnson,* 267 N. Y. S. 2d 301. Since it was the obvious intent and direction of the warrant to authorize a search of only the designated apartments, we decline to read it with "the precision of a pedantic grammarian," *People v. Johnson, supra,* at page 303. We thus conclude that this is not a case where a search warrant is void for unqualifiedly directing the search of an entire apartment house where probable cause is shown only as to certain of the units therein. Such cases are collected in an annotation appearing in 11 A.L.R. 3d 1330, and, on the facts of this case, we deem them inapposite. See particularly, however, *United States v. Hinton,* 219 F. 2d 324 (7th Cir.), and compare *Bland v. State,* 197 Md. 546; *Lucich v. State,* 194 Md. 511, and *Ferguson v. State,* 236 Md. 148.[2]

---

2. That the officers, in executing the warrant, went into the second and third floor apartments in search of appellant Peyton and Wingate does not invalidate the warrant or constitute it a general one. It is clear from the testimony that the officer was not undertaking to search these units, but rather was looking for these individuals, presumably to make an arrest. In any event, in deter-

Appellants further contend that the court's ruling in sustaining the State's objections to certain questions asked of appellant Peyton on direct examination by his counsel was incorrect and constituted prejudicial error. Appellant Peyton testified that he had been away in Maine and that upon his return, he found certain property in his apartment. He was then asked to testify as to what he was told concerning the circumstances under which this property found its way into his apartment. Upon objection by the State, Judge Maguire ruled, we think correctly, that the proffered testimony constituted an inadmissible hearsay declaration.

Hearsay evidence is defined as "testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, *Evidence* (1 Ed. 1954) § 225, p. 460. Defense counsel here attempted to elicit from appellant Peyton a statement that either his uncle or his wife had told him that the stolen property had been brought to the apartment by Peyton's uncle. We think that such testimony would have been clearly objectionable as hearsay, being an attempt to establish that the uncle had in fact brought the property there, a matter concerning which the witness had no first-hand knowledge. Had the appellants wished to established this proposition properly, they could have produced a witness with the requisite knowledge. This they failed to do. We see no error in the court's ruling.

Appellant Frey maintains in addition that the evidence against him was insufficient in law to support the verdict. We find no merit in this contention. It is well established that the unexplained and exclusive possession of recently stolen goods permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief. *Anglin v. State,* 244 Md. 652, 656. This presumption has been applied in a conviction of burglary, *Anglin v. State,* 1 Md. App. 85, as

mining the *validity* of the warrant, we do not consider events transpiring during or after its execution, except perhaps as they color the officers' understanding of the import of the commands expressed in the warrant.

well as in a conviction for grand larceny, *Gamble v. State,* 2 Md. App. 271. The term "recent," when used in connection with recently stolen goods, is a relative term, and its meaning as applied to a given case will vary with the circumstances of the case. *Gamble v. State, supra.* In *Anglin v. State,* 1 Md. App. 85, the time was over six months. We find that the unexplained presence of stolen property in Frey's apartment some five to six weeks after its theft constituted sufficient evidence under the circumstances of this case to support his conviction as to the housebreaking count in the Barry indictment and the storehousebreaking and grand larceny counts in the Smith indictment.

In a reply brief, appellant Frey contended for the first time that the affidavit and application for the search warrant showed on their face that Corporal Maddox was a police officer of Baltimore County, and that the action of a judge of the Supreme Bench of Baltimore City, in issuing a search warrant to him for execution in Baltimore City was beyond the judge's jurisdiction and beyond Corporal Maddox's power to execute; and that it was a violation of due process of law and the rights guaranteed to appellant by power of the State and Federal Constitutions. Not having been raised or decided below, this contention is not properly before us. *Pressley v. State,* 244 Md. 664; *Sherrod v. State,* 1 Md. App. 433. Moreover, the question was not raised in appellant's brief and cannot ordinarily be raised for the first time in a reply brief. See Rule 1031 and *Baxter v. State,* 223 Md. 495. Under these circumstances, the contention is not properly before us for review.

*Judgments affirmed.*