## PHILLIP BERNARD KANE, A/K/A GHOST *v.* STATE OF MARYLAND

[No. 379, September Term, 1970.]

*Decided July 30, 1971.*

468

The cause was argued before ORTH, ANDERSON and POWERS, JJ.

*Leroy W. Carroll* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph B. Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

In a jury trial presided over by Judge J. Gilbert Prendergast in the Criminal Court of Baltimore in February and March, 1970, Phillip Bernard Kane, also known as Ghost, was convicted of several violations of the narcotics laws, and sentenced to terms of imprisonment which aggregate 15 years. He has appealed those judgments to this Court.

The trial involved three indictments, found by the Grand Jury of the City of Baltimore on October 28, 1969, charging that appellant and others, on September 28, 1969, committed offenses as follows:

Indictment 7513 —
First count—possession of heroin.
Second count—control of heroin.
Indictment 7514 —
First count—possession of methadone.
Second count—control of methadone.
Indictment 7515—keeping and maintaining a dwelling house known as 2007 Edmonson Avenue —
First count—resorted to by narcotics addicts, for the purpose of using narcotic drugs.
Second count—used for the illegal keeping of narcotic drugs.
Third count—used for the illegal selling of narcotic drugs.

The indictments grew out of the execution on September 28, 1969, of a search and seizure warrant issued on September 27th by Judge Charles D. Harris of the Supreme Bench of Baltimore City. Evidence seized in the execution of that warrant was admitted at the trial.

Appellant was tried separately from the codefendants who were indicted with him. At the close of the evidence presented by the State, judgments of acquittal were granted as to the first count of each of the three indictments. The defense presented no evidence. A motion for judgment of acquittal on the remaining counts, made at

the close of the whole case, was denied. The jury returned verdicts of guilty on each of the four counts submitted to it.

In this Court, appellant argues that his convictions should be reversed, and raises these questions:

I. Is the search warrant a blanket warrant, in violation of constitutional prohibitions against unreasonable searches and seizures?

II. Does the warrant authorize an unrestricted search of the premises?

III. Was there a showing of probable cause for the issuance of the warrant?

IV. Did the court err in admitting evidence of the commission of other crimes by appellant?

V. Did the court err in denying appellant's motion for judgment of acquittal?

The State presents the first three of these questions in one ultimate question of whether the court erred in overruling appellant's motion to suppress evidence obtained in the execution of the search warrant. We shall consider separately each question as put by the appellant.

### I.

The search warrant issued by Judge Harris commanded any police officer of Baltimore City to search forthwith these persons, premises and vehicles in the City of Baltimore:

1. Phillip Bernard Kane, also known as Ghost.
2. 2007 Edmonson Avenue, beauty shop and residence over it.
3. Linda E. Brown and 4027 Annellen Road.
4. 1967 Pontiac Maryland License HD 5673.
5. Gary Fenwick and 512 Baker Street.
6. Wayne Grant and 833 Bethune Road.
7. Melvin Burrell and 1428 Parrish Street.

All general warrants to search suspected places, without naming or describing the place "in special", are proscribed by the Declaration of Rights of Maryland (Art. 26). The Fourth Amendment to the U. S. Constitution

prohibits unreasonable searches and seizures. Appellant equates the term "general warrant" to what he describes as a "blanket search warrant", and fastens that term upon the search warrant in this case. He cites *Varon, Searches, Seizures and Immunities,* for the proposition that a "blanket search warrant" is one in which several properties are described, and such properties are in possession of different owners or occupants, thus making the warrant void. He supports the contention by citation of a 1952 opinion of the Oklahoma Criminal Court of Appeals, *Williams v. State,* 240 P. 2d 1132, 31 A.L.R.2d 851. In that opinion the comment is made, as a dictum, that if the properties described (in the warrant before that court) were in possession of different owners or occupants, the warrant would have been void as a blanket search warrant. In the report in 31 A.L.R.2d the headnote on this point is classified to 47 *Am Jur, Searches and Seizures,* §§ 34-36, where § 36 states:

> "Where the search of several suspected places is desired, it is not necessary that a separate warrant issue for each place, but the same warrant may describe the several places to be searched."

and cites, as authority for the statement, *Allen v. State,* 178 Md. 269, 13 A. 2d 352.

As a term implying invalidity, "blanket search warrant" does not appear to have achieved recognition in Maryland. We see no need to recognize it now. If the place to be searched is sufficiently described "in special" to enable the officer to locate it with certainty, the warrant is not general as to the place to be searched and is not, for that reason, illegal. No additional descriptive terms are necessary to determine whether a search warrant is a general one.

Appellant cites *Allen v. State, supra,* and several other Court of Appeals decisions for authority that when a search is made at more than one place under the authority of a single warrant, the places searched should ap-

pear to be united by a common unlawful use. The rationale of those cases does not control the decision here. All were decided before *Pegram v. State*, 203 Md. 567, 101 A. 2d 886. That case, decided in 1954, considered the legality of a search warrant issued upon the basis of observations of a described individual in a motor vehicle, also described, which was executed by a search of the motor vehicle and of Pegram, who was the owner, and at the time of the search, was an occupant of the vehicle, but was not the individual specifically described in the warrant. The warrant commanded the search of the automobile, of all persons found in said automobile, of the described individual, and of all other persons found to be violating the lottery laws. At Pegram's feet, in the front of the car, the officers found, in the course of searching the vehicle, a brown paper bag containing lottery slips and other lottery paraphernalia. Citing *Saunders v. State*, 199 Md. 568, 87 A. 2d 618, and *Martini v. State*, 200 Md. 609, 92 A. 2d 456, the Court of Appeals concluded that it was committed to the proposition that directions to search an automobile and a person, combined in one warrant, are separable. It pointed out that invalid directions in a search warrant cannot operate to vitiate the valid commands.

The inclusion in a search warrant of a command assumed to be erroneous and thus invalid can be rejected as surplusage. *Martini v. State, supra.*

No question is raised of the sufficiency of the description of the premises at 2007 Edmonson Avenue, the only place at which contraband or other goods used as evidence at the trial was seized. Appellant's objection is that other places and persons were named in the same search warrant. The objection is not valid.

Within the rule prohibiting general warrants, the search warrant in this case was valid authority for a search of the premises at 2007 Edmonson Avenue, and appellant may not complain that other commands in the warrant may be invalid.

## II.

Appellant also contends that the search warrant in this case was general, and therefore illegal, because it authorized an unrestricted search of the premises. We do not agree.

In *Frey v. State,* 3 Md. App. 38, 237 A. 2d 774, this Court, through Chief Judge Murphy, said, at page 46:

> "A general warrant, broadly defined, is one which fails to sufficiently specify the place or person to be searched or the things to be seized, and is illegal since, in effect, it authorizes a random or blanket search in the discretion of the police in violation of the Fourth Amendment to the Federal Constitution, Article 26 of the Maryland Declaration of Rights, and Section 551 of Article 27 of the Maryland Code (1967 Repl. Vol.), all of which require that search warrants particularly describe the place to be searched and the things to be seized, so as to prevent the search of one place, or the seizure of one thing, under a warrant authorizing search of another place, or the seizure of another thing."

The warrant in this case commanded the seizure, if found, of "books, papers, photographs, and other documents, prohibited drugs, narcotic paraphernalia, deadly weapons, and other contraband which is/are contraband and/or evidence relating to the commission of * * * conspiracy to commit murder and conspiracy to violate the narcotics laws * * *."

We conclude that this command describes the things to be seized, with sufficient particularity to prevent the seizure of one thing under an authorization to seize another thing, and does not authorize an unrestricted search of the premises.

## III.

The first line of attack upon the use of evidence seized in the execution of a search warrant is that the warrant

was issued without probable cause. That attack was made here, by a pretrial motion to suppress the evidence seized. Maryland Rule 729. After hearing arguments on the motion, Judge Prendergast denied it. The point was properly preserved for review on appeal. Rule 729 g. 2.

We accord that review, with the approach detailed by Judge Orth for this Court in *Buckner v. State,* 11 Md. App. 55, 272 A. 2d 828, at pages 61 and 62:

> "When a search warrant is challenged, the lower court and the appellate court when the determination of the lower court is before it on appeal, must look for probable cause only in the affidavit itself and may not go outside it. *Scarborough v. State,* 3 Md. App. 208. However the affidavit should be interpreted in a common-sense and not in a hypertechnical manner, and the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. *Frey v. State,* 3 Md. App. 38, 45-46, summarizing the observations in *United States v. Ventresca,* 380 U. S. 102. But, as we noted in *Frey,* this is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists. See *Hall v. State,* 5 Md. App. 394. In short, there are established propositions lately specifically affirmed in *Spinelli v. United States,* 393 U. S. 410, 419 and noted by us in *Price v. State,* 7 Md. App. 131, 137:
>
> 1) the standard of probable cause is only the probability and not a *prima facie* showing, of criminal activity;
>
> 2) affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial;
>
> 3) issuing judges are not to be confined to

niggardly limitations or by restrictions on the use of their common sense in judging probable cause;

4) the determination of probable cause by the issuing judge should be paid great deference by reviewing courts."

The analysis of probable cause which must be made by the issuing magistrate was thoroughly discussed in the opinion of Judge Moylan for this Court in *Dawson v. State*, 11 Md. App. 694, 276 A. 2d 680. That discussion need not be repeated.

Both *Buckner* and *Dawson*, and following them, *State v. Swales, Welch and Bowman*, 12 Md. App. 69, 278 A. 2d 449, reviewed the authorities in Maryland, and paid due homage to *Aguilar v. State of Texas*, 378 U. S. 108, 84 S. Ct. 1509, and *Spinelli v. United States*, 393 U. S. 410, 89 S. Ct. 584, and their predecessors. We note that the application of *Spinelli* has been somewhat limited by *United States v. Harris*, 403 U. S. 573, 91 S. Ct. 2075.

Following the applicable guidelines, we have carefully reviewed the affidavit submitted to Judge Harris in support of the application for a search warrant, upon which he acted. The affidavit showed that the affiant, Police Sgt. Salvatore Corona, had extensive training in narcotics investigation, and experience in narcotics investigations and raids; that appellant lived at 2007 Edmonson Avenue, over a beauty shop operated by his mother; that several different informants, whose credibility had been demonstrated by subsequent confirmation of information previously given, and the reliability of whose information concerning appellant was confirmed by the very consistency of the information obtained from several separate sources, stated that appellant headed an extensive operation for distribution and sale of narcotics from the Edmonson Avenue house, through several lieutenants and subordinates whom he maintained at various locations.

It is not necessary to detail each of the facts shown in the affidavit, which must be accepted as true, subject to

evaluation of the credibility and reliability of those parts based on hearsay, to agree with the finding made by Judge Harris that there was probable cause to issue the warrant. Several of the informants described their own participation with appellant in his operation. Such statements against an informer's penal interest were entitled to credit. In *United States v. Harris, supra,* Mr. Chief Justice Burger said:

> "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility —sufficient at least to support finding of probable cause to search."

We agree that there was probable cause to issue the search warrant commanding the search of 2007 Edmonson Avenue.

## IV.

The contention that the court erred in admitting evidence of the commission of other crimes by the appellant relates to certain evidence given by the witness Maurice Dilworth tending to show the keeping or selling of narcotics by appellant in or from the premises 2007 Edmonson Avenue, several months before the dates alleged in indictment 7515. The evidence was admitted because the judge deemed it relevant to the charge of maintaining a common nuisance. Appellant was entitled, of course, to ask the judge for an instruction limiting the use of this evidence.

We held in *Ward v. State,* 9 Md. App. 583, 267 A. 2d 255, that a single or isolated illegal act would not cause the premises to be a common nuisance at a specified time, but we said at page 593:

> "Generally speaking, it must appear that the acts injurious or offensive to the public which constitute the nuisance are recurrent. But there

is no particular extent of time prescribed during which the improper practices must continue or recur; each case must be adjudged according to its own circumstances. It is usually deemed sufficient if, when the character of the culpable acts and the circumstances under which they were committed are taken into account, it appears that they were repeated often enough to warrant an inference that the house was kept for the indulgence of such practices. * * * While the indictment charged that he was keeping a disorderly house on November 12, 1968, evidence of acts committed therein prior to that date was clearly relevant and admissible to show that, on that date, he was committing the crime of keeping a disorderly house."

See *Rosenberg v. State*, 12 Md. App. 20, 276 A. 2d 708, and *Berlin v. State*, 12 Md. App. 48, 277 A. 2d 468.

## V.

Appellant argues here that the evidence was insufficient to convict him, and that his motion for judgment of acquittal should have been granted.

The test was set forth by Judge Orth in *Williams aud McClelland v. State*, 5 Md. App. 450, 247 A. 2d 731, when he said for this Court, at pages 466 and 467:

"Upon the motions for judgment of acquittal made at the close of all the evidence it was the duty of the lower court to determine whether the evidence was legally sufficient to permit its submission to the jury. It would be legally sufficient if it showed directly or supported a rational inference of the facts to be proved from which the jury could fairly be convinced beyond a reasonable doubt of the appellant's guilt of the offenses charged."

In announcing his ruling on the motion, and reviewing the evidence, Judge Prendergast said:

"The charge here is, respectively, control of heroin, control of methadone, and maintenance of a nuisance house for the keeping or sale of illegal narcotics, illegal drugs. Now, this trade is carried on in a way that is definitely clandestine and quite different than that of many other forms of business, or, legitimate or illegitimate; and to view it in any other light is to be naive, it seems to me. The State's case begins with the testimony of Mr. Dilworth. I have no doubt he is an accomplice. He was in the drug traffic as a pusher or seller for the defendant, he says. Now, his testimony alone uncorroborated would not make out a case. But the scheme which he described in his testimony is one in which the defendant operated at various places. He identified three of those places, at least, one on Linden Avenue, the precise address not given; and another on Leslie Street; and, the third on Edmonson Avenue out of a beauty parlor, Kane's Beauty Parlor, somewhere between Payson and Pulaski Streets. That is as close identification of 2007 that Dilworth could get. But, at first he was selling narcotics, he says, for the defendant at the other places; and, then, he went up during February or March to Edmonson Avenue, by invitation, to obtain the drugs and to transact this business of selling them for the defendant. Now, just when the police became aware of that isn't clear, but we do know that in June Dilworth was arrested, and he has been in and out of custody ever since, presumably in custody most of the time, and I assume he is in custody now. That much I know. But, at any rate, up to the time of his arrest he had been placing orders and transacting his business by telephone at that address, did not give the phone number, probably wouldn't remember it. His memory is unusually good, but that clearly sug-

gests drug traffic emanated from that address. When I say drug traffic, I mean the traffic that was being carried on by the defendant, according to Dilworth. I am not suggesting this is my decision, just stating the nature of the case, the State alleges it has proved.

Now, no one has testified, other than Dilworth up to this point, the defendant was ever seen at the place, where his mother apparently maintained a beauty parlor. But, at any rate, we do know that the defendant gave as his address, in dealings with the Department of Motor Vehicles, and under the motor vehicle law it is a criminal violation to give a false address, so one would assume that the address given was the address of the defendant. And, the investigator, Mr. McCubbin, of the Department of Motor Vehicles stated that on August 26 he finally caught the defendant at home, picked up his operator's license, and obtained an acknowledgment that his registration and driving license was revoked. He made numerous efforts to locate him at that address and never found him there, which would tend to indicate he didn't spend a great deal of time there; but, could still be using it as a base of operations; at least, one could infer that reason from the evidence that we have heard.

Now, the warrant was executed in the early morning hours of September the 28th at the time evidence was found in various parts of the house. Now, methadone was found in the rear bedroom in which a young lady was found, whose name was Dorothy Gwynn. There is no direct proof as to what relationship, social or otherwise, existed between the defendant and Dorothy Gwynn. But, one could infer a relationship of some sort. And if, in fact, the large quantities of drugs found in the first floor bedroom, that it was a bedroom occupied by Mrs.

Kane and a man named Wideman, and a child. That doesn't mean the defendant could not have used that to store his drugs, or keep his money. The persons who might be interested in stealing or taking drugs or money away from him would be less likely to look there than elsewhere.

It is all a matter of inference from which the members of the jury could draw an inference of guilt or an inference of not guilty. I will certainly instruct them as to the burden of proof, and, as to inferences. But I think the evidence is sufficient and I must submit it to the jury. I do not in so ruling express any opinion as to the guilt or innocence of the defendant. But I think it is a typical case for the jury in this type of alleged law violation."

In *Davis and Green v. State,* 9 Md. App. 48, 262 A. 2d 578, Chief Judge Murphy said for the Court with respect to the sufficiency of evidence to convict for control of narcotics:

"But before the State may obtain a conviction, it must adduce evidence to meet the test of legal sufficiency; such evidence must show directly, or support a rational inference, that the accused did in fact control the drug in the sense contemplated by the statute, namely, that he exercised restraining or directing influence over it."

The evidence in this case was clearly sufficient to justify the inference that appellant did in fact control the narcotics found in the search.

Appellant was convicted of both the second and third counts of indictment 7515, maintaining the dwelling house at 2007 Edmonson Avenue as a common nuisance, used for the illegal *keeping* and for the illegal *selling* of narcotics.

There was no evidence of a sale to an ultimate consumer, consummated on the premises. We construe "used

for illegal selling" to include all links in the chain of distribution and sale, from wholesaler to distributor to retailer to consumer. Premises can be "used for illegal selling" even though the transfer of the product to the consumer, and receipt of his payment for it take place at a different location.

We think the evidence did show directly or support a rational inference of the facts to be proved from which the jury could fairly be convinced beyond a reasonable doubt of the appellant's guilt of the offenses charged.

*Judgments affirmed.*
*Appellant to pay costs.*