[No. 1912-3.   Division Three.   September 8, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK REYES SALINAS, *Appellant.*

*Porter, Schwab & Royal* and *Paul D. Edmondson,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Michael J. McGuigan, Deputy,* for respondent.

GREEN, J.—Defendant, Frank Salinas, was convicted on two counts of possession of controlled substances, *i.e.,* amphetamines and Valium. He appeals contending the court erred in refusing to suppress evidence obtained during a search of his residence pursuant to a warrant. While

Mr. Salinas concedes there was probable cause to issue a search warrant, he argues: (1) the warrant is overbroad on its face for lack of particularity as to the items to be seized; and (2) the scope of the search authorized in the warrant is overbroad in light of the circumstances. Consequently, Mr. Salinas submits that the warrant is invalid and the evidence seized under it should have been suppressed. We disagree and affirm.

On August 22, 1975, the Eastway Pharmacy in Sunnyside was burglarized and drugs were taken. An inventory of the stolen drugs compiled by the owner lists 43 types consisting of 19,670 separate items which are scheduled and legend drugs as set out in RCW 69.50 and RCW 69.41.010(8). Roger Griffin, one of the burglars who were apprehended, stated in an affidavit that after the drugs had been divided with his companion, he went to "Pete Ortega's house . . . and arranged for him to sell the drugs for me." Based on this information, investigating officers obtained a warrant to search the Ortega residence. That search produced a number of drugs and a statement by Mr. Ortega that "he [Ortega] had given part of the drugs to Frank Salinas who lived next door." Based upon this statement and Roger Griffin's further statement that "He [Ortega] told me he delivered part of the drugs to Frank Salinas, his next–door neighbor for him to sell",[1] all of which is contained in Officer Anderson's affidavit, a warrant was issued to search the residence of Frank Salinas for "controlled substance(s) known as scheduled and legend drugs." The search of the Salinas residence resulted in the seizure of a plastic bag containing prescription drugs, syringes, criss–cross speed, marijuana pipes, ground marijuana, marijuana seeds, marijuana roaches, several containers, and a purse. Officer Anderson testified that some of the prescription drugs seized were "prednisone, ritalin, valium."

---

[1] Included in the record is an unsigned group of handwritten interrogatories apparently answered by Roger Griffin, which includes statements that "I gave him [Ortega] the majority of what was left. Pete [Ortega] gave Frank [Salinas] 400 valiums and 456 ritalins . . ."

First, defendant contends that the description "controlled substance(s) known as scheduled and legend drugs" contained in the warrant is overbroad on its *face* because it fails to pass the test of particularity required by the fourth amendment to the Constitution of the United States and article 1, section 7 of the Washington State Constitution. We do not agree.

■■ The Fourth Amendment clearly states that warrants must particularly describe the things to be seized. Alluding to this principle in *Marron v. United States,* 275 U.S. 192, 196, 72 L. Ed. 231, 48 S. Ct. 74 (1927), the court stated:

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

In other words, the warrant must be specific enough to describe the perimeters of the search. Stated another way, the description must inform the officer of the limits of the search. More succinctly, the constitution prohibits seizures "under the unbridled authority of a general warrant." *Stanford v. Texas,* 379 U.S. 476, 481, 13 L. Ed. 2d 431, 85 S. Ct. 506, 510 (1965). Here, the description meets these requirements. The officers were not given unbridled authority to conduct a general exploratory search. The search was limited to the seizure of scheduled and legend drugs under RCW 69.50 and RCW 69.41.010(8). Consequently, the warrant is not overbroad on its face. Defendant's first contention must be rejected.

The second contention raises the question of whether the authorization to seize "controlled substances known as scheduled and legend drugs" was overbroad in light of the circumstances of this case. He argues the warrant should have been either limited to the drugs stolen from the Eastway Pharmacy or to the two drugs, Ritalin and Valium, which Griffin claimed Ortega told him he gave to Mr.

Salinas, notwithstanding Ortega's broader statement to the officers. We disagree.

■ Search warrant cases must be determined on a case–by–case basis and the constitutional requirements are met if the property is described with reasonable particularity under the circumstances. The court in *State v. Helmka,* 86 Wn.2d 91, 93, 542 P.2d 115 (1975), stated it this way:

> We do emphasize, however, that search warrant cases largely must be determined and evaluated on a case by case basis. The general rules must be applied to specific factual settings. We caution that the facts stated, the inferences to be drawn, and the specificity required must fall within the ambit of reasonableness, all to the end that we never authorize general, exploratory searches.

In that case, while the affidavits only indicated marijuana plants were growing on defendant's premises, a warrant authorizing seizure of marijuana was upheld. In *State v. Withers,* 8 Wn. App. 123, 504 P.2d 1151 (1972), the court held the description "merchandise from disabled ship Don Jose" met the requirements of reasonable particularity. Likewise, in *State v. Cowles,* 14 Wn. App. 14, 538 P.2d 840 (1975), *petition for review denied,* 86 Wn.2d 1004 (1975), the court held that the constitutional requirements of particularity were satisfied where an affidavit stated the informant observed narcotics, specifically marijuana, and a search warrant was issued for controlled substances. In varying circumstances, other courts have upheld similar descriptions in search warrants. *See, e.g., People v. Henry,* 173 Colo. 523, 482 P.2d 357 (1971) (narcotics, dangerous drugs, and narcotics paraphernalia); *State v. Stewart,* 129 Vt. 175, 274 A.2d 500 (1971) (contraband, to wit, regulated drugs); *Kane v. State,* 12 Md. App. 466, 280 A.2d 9 (1971) (prohibited drugs); *People v. Fabela,* 272 Cal. App. 2d 122, 77 Cal. Rptr. 183 (1969) (narcotics).

In a recent leading case, *Stanford v. Texas, supra,* the Supreme Court of the United States reviewed the Fourth Amendment guaranties of particularity, holding that where

the basis for the seizure of books is for the ideas they contain, First Amendment rights are involved and the requirements of particularity in the description of the things to be seized is to be accorded the most scrupulous exactitude. However, the court was careful to note that it was not deciding whether the description of the things to be seized would have been too general had the warrant described weapons, narcotics, or "cases of whiskey", specifically referring to *Steele v. United States,* 267 U.S. 498, 69 L. Ed. 757, 45 S. Ct. 414 (1924). In *Steele* the court held the description "cases of whiskey" was not too broad and also authorized seizure of jugs, barrels, gin, alcohol, and bottling machinery. Further, in *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965), the court noted:

> Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*State v. Withers, supra* at 126.

Viewing the circumstances of this case in light of these general principles, we do not find the description, "controlled substances known as scheduled and legend drugs", to be overly broad. Forty–three types of drugs were stolen consisting of almost 20,000 pills. They were prescription–type drugs and, hence, contraband. This is precisely what the warrant described. It would be unreasonable in this case to require an itemized listing of specific drugs in the warrant and to limit a search to those drugs. To do so would require police officers either to be walking laboratories or to be accompanied by a chemist with sufficient equipment to determine if a particular item was within the listing in the warrant. As shown by the testimony of Officer Anderson, on–the–scene identification of drugs is difficult at best. He made a field test on some of the pills which indicated they were amphetamines; however, when they

were later sent to the laboratory, the chemist determined they were not amphetamines. This illustrates the quandary in which a police officer would be placed if the warrant named specific drugs. Here, to limit the warrant to specifically named drugs would seriously impair, if not prevent, the constitutional authorization to conduct "reasonable" searches in the public interest. Moreover, such a limitation is unnecessary in this case because the warrant to seize scheduled and legend drugs did not give police officers unbridled authorization to seize other contraband. It established sufficient perimeters for the search. Thus, we hold that the trial court properly denied defendant's motion to suppress.[2]

Affirmed.

MUNSON, C.J., concurs.

McINTURFF, J. (concurring)—I concur specially only because of the unique facts presented.

Forty–three different dosages of 20 "scheduled and legend" drugs were stolen from a pharmacy. Nearly 20,000 individual items were subject to seizure, and there was probable cause to believe Mr. Salinas was possessed of at least part of them.

But I would not hesitate to reverse a conviction obtained on a warrant seeking "scheduled and legend drugs" where there was less probable cause or where the drugs sought from the defendant's possession were specifically known. Wholesale use of warrants like this in all circumstances cannot be tolerated. They foster a less than constitutional concern over the individual's "security against arbitrary intrusions by official power." *Coolidge v. New Hampshire,*

---

[2]Our holding is consistent with RCW 69.41.060 which provides, in part:

"If, upon the sworn complaint . . . it shall . . . appear to any . . . justice of the peace that there is probable cause to believe that *any* legend drug is being . . . kept in violation of the provisions of this chapter, such justice of the peace . . . shall . . . issue a warrant directed to any peace officer in the county, commanding him to search the premises designated and described in such . . . warrant, and to seize *all* legend drugs there found, . . ." (Italics ours.)

403 U.S. 443, 455, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). As Mr. Justice Bradley said in *Boyd v. United States,* 116 U.S. 616, 635, 29 L. Ed. 746, 6 S. Ct. 524 (1886):

It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.