[Crim. No. 13312.    Second Dist., Div. Three.    Mar. 7, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JESS JOE VALENZUELA, Defendant and Appellant.

James D. Loebl, under appointment by the Court of Appeal, and Loebl, Bringgold & Peck for Defendant and Appellant.

828

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney, Ronald H. Gill, George C. Eskin, Michael D. Bradbury and Peter D. Kossoris, Deputy District Attorneys, for Plaintiff and Respondent.

SHINN, J.†—In a trial without jury Jess Joe Valenzuela was convicted of a felony, was denied probation and was sentenced to state prison. An allegation of a prior conviction of felony was found to be true. The defendant appealed in propria persona and counsel was appointed.

The information charged that the defendant violated section 243 of the Penal Code in that ". . . he did, by means of force likely to produce great bodily injury, assault Gordon K. Hubbard, a peace officer engaged in the performance of his duties, when he knew or reasonably should have known that the said Gordon K. Hubbard was a peace officer engaged in the performance of his duties."

A second count which accused defendant of violation of section 4550 of the Penal Code (rescuing a person in legal custody) was dismissed.

The language of the information was taken from section 243 of the code which does not define the offense but denounces as a felony a battery committed against the person of a peace officer under the conditions which were described in the information.

"A battery is any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.)

Section 245 of the Penal Code makes a felony ". . . an assault upon the person of another · . . by any means of force likely to produce great bodily injury . . . ."

No point is made of the use of the word "assault" in an attempt to allege an aggravated battery and defendant could not have been misled. The crime proved was that Valenzuela kicked Officer Hubbard in the face, chipping one of his teeth, while the officer was making an arrest of one Perez, who was a friend of defendant. The only factual question in dispute was whether the officer was kicked by Valenzuela or someone else.

In summary, the facts developed by the evidence were that at 10 p.m. Officer Hubbard, in uniform and driving a black and white marked police car on patrol of the streets of Oxnard, observed a man lying on the sidewalk with his feet and legs under a car parked at the curb. The man was found to be

†Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

drunk, was handcuffed and eventually placed in the police car. Across the street, and some 35 or 40 feet away, a crowd of 10 or 15 teenagers (later augmented to 25 or 30) was gathered in front of a liquor store. The crowd was in commotion; bottles were hurled at the officer and he was struck by fragments of shattered glass. He radioed for assistance. Hearing pistol shots, Hubbard advanced toward the crowd. He observed a youth tuck a pistol into his waistband; the youth disappeared, but Hubbard saw another youth drinking from a beer bottle, which he placed upon the sidewalk. Learning that the youth, Perez by name, was but 18 years old Hubbard took him into custody, retrieved the beer bottle, and holding the youth, returned to the police car with him and placed the beer bottle on a fender. Perez struggled, struck the officer in an effort to get away, and they fell to the ground. The crowd assembled around the struggling men and the officer was repeatedly struck; he was also kicked several times and as he turned his head to see who was kicking him, Valenzuela kicked him in the mouth, chipping a tooth. In the meantime Officers Bowen, Devorack, Hurley and Phillips arrived in a car. They saw Valenzuela kicking Hubbard several times; they saw Valenzuela run away; three of them followed him and placed him under arrest as he fought and struggled with them. Perez escaped. On the stand Valenzuela testified that he was 3 or 4 feet away from the struggling officer and Perez; the officer was being struck by others in the crowd which had gathered, but that he did not strike or kick him.

There was evidence that while defendant was being placed in the police car he struck his head upon the frame of the door. He was taken to the station and later to a hospital. Enroute to the station Officer Bowen informed defendant as to his constitutional rights and defendant said he understood them. Without interrogation, defendant voluntarily stated "I am sorry that I kicked the policeman in the head. I will never do it again." Later, on the way to the hospital, defendant repeated the statement and Officer Hurley heard defendant make this statement. During the booking of defendant, and after he had been informed of his constitutional rights by Hubbard, defendant voluntarily said "I am sorry. I didn't mean to kick you. I was just trying to help my buddy to get away from you."

Although several claims of error are asserted we consider first the only one deserving of particular discussion, namely, that defendant did not in open court waive his right

to trial by jury, in compliance with the requirement of article I, section 7 of the California Constitution.

It is said in appellant's opening brief: "In the case at bar, there were several defects in the purported waiver. One, it was made not in open court, but in chambers as reflected by the Clerk's Transcript, p. 7A. Two, no indication in the Reporter's Transcript of any kind was made that the defendant waived the jury by his own express use of language. Three, the Clerk's Transcript notation did not purport to reflect the actual words of the defendant if any."

Points two and three were disposed of by the addition of a Reporter's Supplemental Transcript. Thus there remains the argument based upon the erroneous meaning appellant gives to the words "chambers" and "open court," as found in the clerk's minutes.

The day before the trial defendant waived his right to a jury trial of the allegation that he had suffered a prior conviction of felony and it was ordered that the trial of that issue would be before the court.

On the following day the cause was called for trial. Present were the defendant and his counsel, a deputy public defender, a deputy district attorney, and a panel of prospective jurors. The clerk's minutes state: "In chambers with respective counsel and the defendant present, on motion of counsel for the People, the court orders that Count II of the Information be and hereby is dismissed.

"Defendant, at this time, withdraws his request heretofore made for a jury trial and now requests a trial by Court, to which request, counsel for the People has no objection.

"Respective counsel advise the Court of their willingness to have the trial remain before this Court, to which agreement, said defendant concurs.

"Resuming in open Court, the Court now thanks and excuses the panel of prospective jurors. . . .

"Said trial now proceeds before the Court with respective counsel and the defendant present."

Upon request of the Attorney General the record was augmented by addition of a transcript of the reporter's notes of the proceedings in the room called "chambers." It reports the proceedings as follows:

"Ventura, California, Tuesday, December 6, 1966; 10:00 a.m.

\* \* \*

"MR. PAIK: Your Honor, I believe Mr. Eskin has a motion

to dismiss Count II. MR. ESKIN: Your Honor, under the provisions of Penal Code 1385, the People would respectfully move the Court to dismiss Count II of the information in the furtherance of justice. Count II alleges a violation of Penal Code 4550. THE COURT: Count II is dismissed. MR. PAIK: At this time, your Honor, the defendant wishes to withdraw his previous request for a jury trial and the defendant wishes to request Court trial. Is that your desire, Mr. Valenzuela? THE DEFENDANT: Yes. MR. PAIK: And counsel joins the waiver. THE COURT: I think that is sufficient to make the waiver. MR. ESKIN: Yes, your Honor. The People have no objection to the defendant's waiver.''

█ The meaning of the word ''chambers'' varies with the context in which it is used. It may mean a room adjacent to a courtroom in which a judge performs the duties of his office when his court is not in session. The word ''chambers'' is also commonly used in a different sense. When a judge performs a judicial act while the court is not in session in the matter acted upon, it is said that he acted ''in chambers'' whether the act was performed in the ''judge's chambers,'' the library, at his home, or elsewhere. (*Von Schmidt* v. *Widber*, 99 Cal. 511 [34 P. 109]; *In re Lux*, 100 Cal. 593 [35 P. 341].)

█ If, in the judge's chambers, the court is in session as to the matter on trial, the judicial action is taken in court, and not ''in chambers.'' It is not questioned that the persons in the judge's chambers constituted a court nor is it disputed that the court was in session.

In the present case the waiver of jury trial was made in court, and it was in open court if the public was not excluded.

█ We do not believe that ''in open court'' means any more or less than ''public trial,'' which is guaranteed by the Constitution.

A court session which is ''public'' is also ''open'' and it is appropriate to look to the definitions of ''public trial.''

''Under normal conditions a public trial is one which is open to the general public at all times.'' (*People* v. *Byrnes*, 84 Cal.App.2d 72, 73 [190 P.2d 290].)

█ ''The trial should be public in the ordinary commonsense acceptation of the term. The doors of the courtroom are expected to be kept open, the public are entitled to be admitted, and the trial is to be public in all respects, as we have before suggested, with due regard to the size of the courtroom, the conveniences of the court, the right to exclude objection-

able characters and youth of tender years, and to do other things which may facilitate the proper conduct of the trial." (*People* v. *Hartman,* 103 Cal. 242, 245 [37 P. 153, 42 Am. St. Rep. 108].)

In *People* v. *Barry,* 153 Cal.App.2d 193, 212-213 [314 P.2d 531], the court quoted from *People* v. *Douglass,* 100 Cal. 1, 4 [34 P. 490], the statement " '. . . the rule is settled by decisions of this court, found in nearly every volume of our reports, that on appeal all intendments are in favor of the regularity of the action of the court below, and that error will never be presumed, but must affirmatively appear' " and the court continued : "Such being the rule on appeal, there must be an *affirmative* showing of error to overcome the presumption to the contrary."

In *People* v. *Terry,* 99 Cal.App.2d 579 [222 P.2d 95], the trial was in a room ordinarily used by the board of supervisors ; the defendant contended that he was denied a public trial because the proceedings were not in a courtroom. The contention was rejected. After stating the requirements of a public trial the court said (p. 584) : "No showing is made nor does anything appear in the record before us that this requirement was not fairly observed."

In *People* v. *Cash,* 52 Cal.2d 841 [345 P.2d 462], the trial was moved from the courtroom to the judge's chambers for the purpose of playing a tape recording and this fact was urged as a basis for the claim that the defendant was deprived of a public trial. The court stated (p. 846) : "The full court (judge, clerk, bailiff, reporter, defendant and both counsel) took part in these sessions in chambers and no objection was raised prior to appeal. Furthermore, there is nothing in the record to indicate that the sessions in chambers were not public. It is not claimed that the door between the courtroom and the chambers was closed, and there is no indication that any member of the press or public who desired access would have been barred from entering the chambers."

It is not suggested that the door between the courtroom and the judge's chambers was closed. Nevertheless, we consider this to be the important factual question which bears directly upon the sufficiency of the waiver.

The record does not show that before moving the trial to the judge's chambers the court declared a recess or indicated in any manner that the session in chambers was to be private. There was no evidence that the door between the two rooms was closed at any time during the court session in chambers. Full effect must therefore be given to the presumption that

the court accepted the waiver of jury trial in open court and not behind closed doors.

Appellant's contention that his waiver of jury trial was not in open court finds no support in the record.

It is argued that the testimony of the police officers who described defendant's attack upon Officer Hubbard and the testimony of officers as to the admissions of defendant was inherently improbable. As we read the testimony it sounds altogether reasonable and consistent.

Other claims of error are urged. It was developed in the direct examination of Officers Bowen and Hurley, who had identified Valenzuela as the one who was kicking Hubbard, that each officer had known Valenzuela for several years. It is claimed that this evidence wrongfully reflected upon the moral character of the defendant but we do not think it was a blemish upon the reputation of either the defendant or the officers. There was no error. Moreover, there was no objection to the receipt of the evidence.

Another argument is that it was error to admit evidence of defendant's damaging admissions, and that without those admissions there would have been no evidence that defendant knew that Hubbard was a police officer engaged in the performance of his duty. It is not questioned that there was ample evidence defendant was informed of his constitutional rights and understood them. His statements were made voluntarily, without questioning or pressure. Defendant testified he knew Hubbard was a police officer.

The probation hearing was held three weeks after the trial. Instead of stating he had considered the report (Pen. Code, § 1203), the judge said he had read it. The judge's statements clearly disclosed that he took into consideration the contents of the report. Furthermore, in the superior court file of this case, which we have added to the record on appeal, as authorized by rules 12(a) and 30 of the California Rules of Court there is the signed written statement of the judge that the report "has been read and considered" by him.

It is also pointed out that at the time of sentence the judge had to be reminded that the trial had been to the court, and that the prior conviction had been denied but had been proven. These minor miscues resulted in no prejudice to the defendant.

The judgment is affirmed. The order denying motion for new trial being nonappealable the purported appeal therefrom is dismissed.

Ford, P. J., and Cobey, J., concurred.

A petition for rehearing was denied on April 5, 1968 and the following opinion was then rendered:

THE COURT.—Appellant seeks a rehearing and the taking of further evidence to establish, as his attached declarations purportedly show, that when the jury waiver was taken in this case the door between the chambers and the courtroom was actually closed and neither the public nor the press was invited into the chambers.[1]

While it is questionable whether additional evidence may be taken on a criminal appeal (see *People* v. *Benford,* 53 Cal.2d 1, 7 [345 P.2d 928]; *People* v. *Merriam,* 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161]) we need not decide the point at this time. We may assume, *arguendo,* that it *may* be done. (See Cal. Rules of Court, rule 23(b).) But to do so here would be futile because if state constitutional error were thereby proven, such error under the circumstances of this case would be nonprejudicial. (See Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 834-837 [299 P.2d 243]; *People* v. *Bostick,* 62 Cal.2d 820, 824-826 [44 Cal.Rptr. 649, 402 P.2d 529].)

The petition for rehearing and leave to take additional evidence is denied.

Shinn, J., concurred in the order denying rehearing.

Appellant's petition for a hearing by the Supreme Court was denied May 1, 1968. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.

---

[1]In the counterdeclaration of the Assistant District Attorney of Ventura County it is alleged that a second door into the chambers, the one from the visitor's reception area, was open throughout the waiver proceedings.