[Crim. No. 15132.    Second Dist., Div. Two.    Apr. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN ARMANDO FABELA, Defendant and Appellant.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Larry Ball, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant charged, by information, with possession of heroin (§ 11500, Health & Saf. Code) and, by amended information, with four prior convictions, pleaded not guilty, denied the priors and waived jury.

During the course of the trial, appellant moved to suppress the search warrant which led to his arrest. The motion was denied. The cause was, by stipulation, submitted on the transcript of the preliminary hearing, each side reserving the right to introduce additional evidence. The People introduced no additional evidence. Appellant testified in his own behalf. He was found guilty as charged. On arraignment for a sentence the priors were found to be true. Probation was denied and appellant was sentenced for the term prescribed by law. The appeal is from the judgment. Appellant assigns as error (1) the invalidity and illegal execution of the search warrant, (2) his interrogation in violation of *Miranda*, (3) the failure of the trial court to make a separate finding as to each prior, and (4) denial of probation. Defendant also petitions this court to augment the record on appeal to include the superior court file containing the original search warrant and supporting affidavit. The record has been so augmented.

Contrary to appellant's contention, the original warrant bears the actual signature of the issuing magistrate and not merely a rubber stamp imprint thereon. The warrant authorized the search of the entire premises described therein as 1714 East 66 Street, Los Angeles, a single level frame house and the garage and surrounding grounds and specifically authorized search to be made of the person of appellant. The object of the search set forth was, among other things, to discover narcotics and narcotic paraphernalia. The supporting affidavit made by Deputy Sheriff Rudolph (Deputy) is before us. It was based on information furnished by a reliable informant and Deputy's personal observation of the house. It is not subject to the infirmities spelled out in *Spinelli* v. *United States*, 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]. The affidavit disclosed that the informant had purchased heroin on several occasions at the house from appellant and another person named in the warrant and, in some detail, facts relating to two other narcotic investigations conducted by Deputy upon information supplied by the same informant which had led to arrests. The informant had also furnished information to a fellow officer on five other occasions which led to the arrest and conviction of narcotic violators. In addition, the Deputy's affidavit contained facts relating to his personal observation of a sale of heroin made from the searched premises.

Appellant's primary challenge based on *Aguilar* v. *Texas*, 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], is to the

validity of the search warrant. ▮ The test of the sufficiency of an affidavit for the issuance of a search warrant is whether the issuing magistrate was "informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable'." (*Aguilar* v. *Texas*, 378 U.S. at p. 114 [12 L.Ed.2d 723 at p. 729, 84 S.Ct. 1509].) In *Aguilar*, the court, noting that the affidavit contained no affirmative allegation that either the affiant or his informant spoke with personal knowledge of the facts contained therein, said (at pp. 113-114 [12 L.Ed.2d at p. 728]) : "For all that appears, the source here merely suspected. believed or concluded that there were narcotics in [defendant's] possession." ▮ Unlike *Aguilar*, the supporting affidavit before this court is based on a reliable informant's facts, including a sale of heroin by appellant to the informant at the searched premises, and is also based on the personal knowledge of Deputy. The affidavit at bench presented adequate facts to enable the magistrate to determine the existence of probable cause upon which to issue the warrant. (Cf. *People* v. *Sesslin*, 68 Cal.2d 418, 425 [67 Cal.Rptr. 409, 439 P.2d 321]; *Spinelli* v. *United States, supra,* 21 L.Ed.2d 637.)

▮ Citing *People* v. *Berger*, 44 Cal.2d 459 [282 P.2d 509], appellant attacks the warrant for lack of sufficient particularity as to the place to be searched as required by section 1525, Penal Code. In *Berger*, a search was held unlawful where "[t]he warrant placed no restrictions on the areas to be searched or the things to be seized . . ." (44 Cal.2d at p. 461.) Here, the warrant, in compliance with section 1525, specifically delimited the area to be searched (house, garage and surrounding grounds) and the things to be seized (narcotics, dispensing paraphernalia and other articles, such as rent and utilities receipts, showing control of the premises).

On July 12, 1967, armed with the warrant, Deputy and other officers went to the front screen door of the house on East 66th Street. Deputy identified himself to a woman who came to the door and informed her of the warrant. Appellant was sitting, in view of Deputy, at the kitchen table. Deputy observed appellant rise and make movements under a newspaper with his hands. The paper was on top of the table. "From where I was standing it looked like he may have had

something in his hand and was trying to push it . . . something under the newspaper.'' Believing appellant was attempting to destroy evidence, Deputy opened the unlatched screen door and walked into the house with his gun drawn. Deputy then identified himself, and after showing appellant the original warrant, searched his person. In appellant's left front pocket, Deputy found two balloons containing a powder, thereafter determined by police chemists to be heroin. Deputy advised appellant of his *Miranda* rights. Appellant stated that he wished to remain silent. Further search inside and outside the house produced several other balloons from a trash can outside the rear door, a razor blade, eye dropper and one-quarter measuring spoon from a bedroom drawer, and codeine and aspirin tablets from a jacket. which the defendant was then asked to, and did, identify as belonging to him.

At the trial, appellant alone testified in his defense. He denied having narcotics in his possession on the day of the arrest. He admitted something was taken from his pocket, which the officers claimed ''was a couple of balloons'' containing ''a gram.'' He also admitted that he had taken narcotics that day and had fresh marks on his arms. [When asked about priors, defendant admitted that he had been previously convicted of armed robbery, burglary and possession of heroin.]

■ Appellant contends that the search was carried out by means of an illegal entry. However, there is no constitutional right to destroy contraband. (*People* v. *Carillo*, 64 Cal.2d 387, 391-392 [50 Cal.Rptr. 185, 412 P.2d 377].) The entry at bench, although not in literal accord with Penal Code, section 844, was made after the officer identified himself and said he had a search warrant, and only when Deputy saw movements of the man the warrant was for, to wit, appellant. Under these circumstances which were suspicious Deputy, believing appellant might be destroying evidence, opened the unlocked screen door. The entry was lawful. (*People* v. *Maddox*, 46 Cal.2d 301, 305-307 [294 P.2d 6]; *People* v. *Covan*, 178 Cal.App.2d 416, 418-419 [2 Cal.Rptr. 811]; *People* v. *Morris*, 157 Cal. App.2d 81, 84 [320 P.2d 67]; cf. *People* v. *Kanos*, 70 Cal.2d 381, 384-386 [74 Cal.Rptr. 902, 450 P.2d 278]; *People* v. *Rosales*, 68 Cal.2d 299, 302-305 [66 Cal.Rptr. 1, 437 P.2d 489].)

■ Appellant claims that after he was advised of his rights he was asked to identify a jacket hanging in the premises. Deputy testified at the preliminary that appellant regarded it as his. Appellant asserts that the question and

answer were a violation of the rights afforded him by *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The jacket produced codeine and aspirin tablets, not contraband. Neither the jacket nor its contents were essential to the conviction. Under such circumstances, the violation of *Miranda* rights is harmless beyond a reasonable doubt. (*Chapman* v. *California*, 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824].)

Contrary to the contention of appellant the minutes of the trial court show that there is a separate listing in the judgment of each prior conviction found to be true. (Pen. Code, § 1158.)

▓ Finally, appellant contends that the court did not read and consider the probation report as required by section 1203, Penal Code. The trial judge did not say he had in so many words. The record shows, however, that the trial judge did. Before denying probation, the trial judge said, ''As the [probation] officer says in this matter, he has been in time after time, and when he comes out he is right back doing the same thing again.''

''The judge's statements clearly disclosed that he took into consideration the contents of the report. Furthermore, in the superior court file of this case, which we have added to the record . . . there is the signed written statement of the judge that the report 'has been read and considered' by him.'' (*People* v. *Valenzuela*, 259 Cal.App.2d 826, 833 [66 Cal.Rptr. 825].)

The granting or withholding of probation was a matter for the determination of the trial judge in the exercise of his sound discretion. (*People* v. *Pike*, 183 Cal.App.2d 729, 735 [7 Cal.Rptr. 188]; *People* v. *Duke*, 164 Cal.App.2d 197, 199 [330 P.2d 239].) No abuse of discretion is shown.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 18, 1969.