[No. F007696. Fifth Dist. Aug. 1, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
CURLEY DON GORLEY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

Dale S. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roger E. Venturi and Alison Aleman, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HAMLIN, Acting P. J.**—Appellant Curley Don Gorley was convicted by a jury of residential burglary (Pen. Code, §§ 459/460).[1] He was sentenced to prison for the lower term of two years, but sentence was suspended pending his successful completion of a commitment to the California Rehabilitation Center. He appeals, contending the matter should be remanded for resentencing because the trial court did not properly consider his application for probation. We reject appellant's contentions and affirm the judgment.

### Factual and Procedural Background

As appellant has raised no claim of error concerning the trial, the evidence may be summarized briefly.

On the morning of October 4, 1985, appellant burglarized the residence of Margo Wilson in Terra Bella, climbing through a window and taking $335 to $400 cash from a desk and a kitchen drawer. Appellant's girlfriend regularly cleaned house for the victim, and appellant had assisted her on several occasions. Investigating officers lifted from the window latent fingerprints that ultimately led them to appellant.

On February 13, 1986, appellant agreed to accompany Detective Kirk Swartzlander to the Porterville sheriff's substation for the purpose of investigation. After waiving his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]),[2] appellant admitted that he committed the burglary. Appellant said that he went to the Wilson residence to see the victim's puppies. As no one was home, he "looked around a little and crawled through a window and got into the drawer and got the money out." Appellant, who was distraught, explained to police that he took the money to pay off a drug debt; "some guys were after him" and would kill him if he did not pay.

At trial, appellant denied that he committed the offense. Appellant and his girlfriend testified that appellant was helping the girlfriend clean another client's house on the morning of the burglary. Appellant testified that he "made a story up" when interrogated because he was pressured by the officers, was upset and had no place to stay.

---

[1] Except as otherwise indicated, all statutory references are to the Penal Code.

[2] The validity of appellant's *Miranda* waiver was the subject of an Evidence Code section 402 hearing prior to jury selection. Appellant testified, in conflict with the detective's testimony, that he requested an attorney "at least" three times during the interrogation and did not knowingly and voluntarily waive his rights. The judge expressly disbelieved appellant's testimony and found that he voluntarily waived his rights.

Following appellant's conviction, the trial court held its initial sentencing hearing on August 5, 1986. At that time the judge had before him, and stated orally and in writing that he had read and considered, a probation report (RPO) that indicated incorrectly that appellant was statutorily ineligible for probation. The RPO indicated that appellant was 24 years old at the time of the offense and had one prior conviction of petty theft in 1982 for which he completed a term of probation. Appellant admitted a past addiction to cocaine, which he used on a daily basis for two years prior to May 1985. At one time he used as much as $600 of the drug in one day and had to work at two jobs to maintain his habit. The probation officer noted that a letter from Teen Challenge indicated that appellant would be accepted in their program.

The RPO listed as circumstances in mitigation that appellant had an insignificant prior criminal record (Cal. Rules of Court, rule 423(b)(1));[3] that he was suffering from drug addiction, a physical condition that significantly reduced his culpability (rule 423(b)(2)); and his prior performance on probation was good (rule 423(b)(6)). The report noted in aggravation that the crime appeared to be premeditated (rule 421(a)(8)). Although the report mistakenly indicated that appellant was statutorily ineligible for probation, it listed several factors affecting probation under rule 414.

With the acquiescence of defense counsel, the court suspended criminal proceedings pursuant to Welfare and Institutions Code section 3051 as recommended in the RPO and appointed a doctor to examine appellant to determine whether he was addicted or in imminent danger of becoming addicted to narcotics. The matter was continued for receipt of the doctor's report and, at defense counsel's request, for a supplemental RPO.

On September 8, 1986, a supplemental RPO was filed indicating that appellant could be admitted to probation if the court found that this was an unusual case within rule 416(f) (defendant youthful and no significant prior criminal record); the report recommended a grant of probation on various conditions, including service of a jail term and participation in the Teen Challenge residential program. On September 16, 1986, the proceedings resumed with the doctor's report being received in evidence. The court found that appellant was addicted to or in danger of becoming addicted to the use of narcotics and reinstated criminal proceedings to entertain arguments of counsel concerning the proper disposition of the case. Defense counsel responded: "Your Honor, the probation officer wrote his original report under the false assumption that Mr. Gorley was not eligible for probation. When that was pointed out to him he indicated that he would

---

[3] Further references to rules are to the California Rules of Court.

write an additional report, which he did after he received I believe the report from Dr. Velosa and some information from Teen Challenge.

"I would indicate to the Court that when I spoke to the probation officer after writing him a memo indicating that Mr. Gorley was in fact eligible for probation although under a different test, that of unusual circumstances, he immediately indicated that he would have written a report indicating probation as the appropriate sentence if he had known that. That's what he's followed up and done.

"He's written a report recommending that the defendant be placed on probation with a year in custody, a portion of which is to be spent as a resident of Teen Challenge. I think the recommendation is reasonable under the circumstances, in light of lack of prior record of any substantial nature . . . and the facts and the circumstances of the case.

". . . . . . . . . . . . . . . . . . .

". . . I don't think that this is a State prison case. I think that the unusual circumstances are there and the probation officer's reasoning is logical. I would ask the Court to follow the recommendation."

The prosecutor rejoined: "Your Honor, we don't find that it's unusual circumstances. Twenty-five is no longer a youthful age. It's not unusual for people to break into homes, steal money for purposes of drugs. In fact, that's quite usual. The fact that he's squandered his money on drugs is tragic and stupid, but it's also not unusual. . . ."

The court then pronounced judgment as follows: "It's going to be the order of this court that this defendant's application for probation be denied. The Court does not find sufficient and unusual circumstances to justify the granting of probation in this case. The Court is going to order the defendant to serve the minimum term in State prison, that of two years.

"The Court will order the minimum term because of the defendant's lack of significant prior record. The Court will order that this term be suspended pending the defendant's successful completion of the term at the California Rehabilitation Center." At no time during the September 16 hearing did the judge state that he had read or considered the supplemental RPO, and the printed recital to that effect at the end of the supplemental RPO is not signed.

## Discussion

I. *Is remand required because the court failed to state on the record that it had considered the supplemental RPO (§ 1203, subd. (b))?*

■ Appellant first contends the case must be remanded for resentencing because the trial judge did not state, as required by section 1203, that he had read and considered the supplemental RPO. Respondent argues that there was no error, as the court's familiarity with the supplemental RPO can be inferred from the record and, assuming there was error, it was harmless as it is not reasonably probable that probation would have been granted had the court expressly indicated that it had considered the report.

Section 1203, subdivision (b), provides in relevant part:

". . . At a time fixed by the court, the court shall hear and determine the application, if one has been made, or, in any case, the suitability of probation in the particular case. At the hearing, the court shall consider any report of the probation officer and *shall make a statement that it has considered such report* which shall be filed with the clerk of the court as a record in the case. . . ." (Italics added.) The provision of the statute requiring an on-the-record statement that the judge has considered the RPO was added in 1935 and has remained the same in substance ever since.[4] The language of the statute is clear and mandatory (see *Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155, 157 [137 Cal.Rptr. 154, 561 P.2d 244]): the judge not only must consider any RPO, but also must state on the record that he has done so. Accordingly, it was error for the judge to fail to attest that he had considered the supplemental report filed in this case, and the question is the effect of the error.

In *People* v. *Arredondo* (1975) 52 Cal.App.3d 973 [125 Cal.Rptr. 419] this court reversed a state prison commitment in a statutory rape case and remanded with directions for the judge to consider the defendant's suitability for probation upon resentencing. The jury had recommended prison pursuant to section 264, and the trial court apparently believed in error that the jury's recommendation precluded consideration of probation. The opinion further states: "We have augmented the record with the probation

---

[4]The corresponding language of the 1935 statute reads as follows: "At such time or times fixed by the court, the court must hear and determine such application and in connection therewith must consider any report of the probation officer, and must make a statement that it has considered such report which must be filed with the clerk of the court as a record in the case." (Stats. 1935, ch. 604, § 1, pp. 1706-1707.) The 1971 amendment revised the wording only and did not effect any substantial change in the statute. (Stats. 1971, ch. 706, § 1, p. 1367; see *People* v. *Cooper* (1984) 153 Cal.App.3d 480, 483 [200 Cal.Rptr. 317].)

officer's report and the reporter's transcript of the sentencing hearing. The record does not indicate that the trial court considered the report of the probation officer before passing on probation or sentence as required by Penal Code section 1203. The law is clear that a trial court is without power to deny probation or impose sentence until it has expressly and in the statutory language stated on the record or in writing that it has so read and considered the report. (Pen. Code, § 1203; *People* v. *Rojas* (1962) 57 Cal.2d 676, 681 [21 Cal.Rptr. 564, 371 P.2d 300] . . .; *People* v. *Williams* (1963) 223 Cal.App.2d 676, 680 . . . .)" (*Id.* at pp. 981-982.) Literal application of this language would necessitate automatic remand whenever a court failed to make a formal attestation under section 1203. However, it is not clear that previous case law or considerations of policy compel such a result.

Examining the cases cited in *Arredondo,* it appears that *People* v. *Rojas* (1962) 57 Cal.2d 676 [21 Cal.Rptr. 564, 371 P.2d 300] similarly involved a situation where the trial judge did not actually consider the defendant's application for probation and made no order expressly denying probation. (*Id.* at pp. 680-681.) *People* v. *Neal* (1951) 108 Cal.App.2d 491, 494-495 [239 P.2d 38], cited in *Rojas* as "not dissimilar" factually, remanded for resentencing where there was no ruling upon the defendant's application for probation and the record showed no statement by the judge that he had considered the RPO.

*People* v. *Williams* (1963) 223 Cal.App.2d 676, 680-681 [35 Cal.Rptr. 805], applied a per se remand rule where the sentencing judge made no on-the-record section 1203 statement and it appeared that a different judge had signed the RPO, although the record otherwise showed the report was before the sentencing judge. "The reporter's transcript does not expressly show that the probation report was read by the trial judge, and no oral statement by that judge that he had read and considered the report appears in the record. It is true that the transcript does show clearly that the entire file, which included the probation report, was before the court, and that he referred to it in his discussion with counsel. But that is not enough. The making of the statutory statement is mandatory; and, even though we may conclude that the report had, in fact, been read and considered, the court was without power to deny probation or to impose sentence unless and until it had expressly, and in the statutory language, stated on the record or in writing that he had so read and considered the report. (*People* v. *Rojas, supra,* . . . 57 Cal.2d 676, 681.)" (*Id.* at p. 680.)

*Williams* seems to represent the extreme position for reversal. In *People* v. *Montgomery* (1955) 135 Cal.App.2d 507, 514-515 [287 P.2d 520], the court took the opposite position, holding that it was "not required that the record show a compliance with these requirements of Penal Code, section

1203. When the record is silent as to such matters it will be presumed that the court has discharged the duty imposed upon it by law. [Citations.]" We believe the stance taken in *Montgomery* is wrong; the cases cited do not discuss section 1203 or any other statute that mandates an on-the-record statement by the judge.

Several cases cited by respondent hold that remand is not required where the court has signed a written statement that it has considered the RPO, as is generally included at the end of the report, despite the absence of an oral statement to that effect at sentencing. (See *People* v. *Valenzuela* (1968) 259 Cal.App.2d 826, 833 [66 Cal.Rptr. 825]; *People* v. *Burkett* (1966) 239 Cal.App.2d 456 [48 Cal.Rptr. 900]; *People* v. *Escobar* (1954) 122 Cal.App.2d 15, 18 [264 P.2d 571].) In *People* v. *Fabela* (1969) 272 Cal.App.2d 122, 127 [77 Cal.Rptr. 183], although the judge "did not say he had [read and considered the RPO] in so many words," the reviewing court upheld the judgment and sentence because the record showed that he had considered the report. "Before denying probation, the trial judge said, 'As the [probation] officer says in this matter, he has been in time after time, and when he comes out he is right back doing the same thing again.'" (*Ibid.,* brackets in original.) The court also quoted *Valenzuela,* in which there was a signed written statement by the judge; it is not clear whether there was such a written attestation in *Fabela*.

The statement in *People* v. *Williams, supra,* 223 Cal.App.2d 676, 680, repeated in *People* v. *Arredondo, supra,* 52 Cal.App.3d 973, 981-982, that a court is "without power to deny probation or to impose sentence" until it has formally certified that it has considered the RPO, does not appear to be accurate. ■ Although the court's power concerning probation is strictly statutory (*In re Acosta* (1944) 65 Cal.App.2d 63, 65 [149 P.2d 757]), and the statutory directive is mandatory, procedural error in passing upon probation does not deprive the court of jurisdiction. (See *In re Oxidean* (1961) 195 Cal.App.2d 814, 817 [16 Cal.Rptr. 193].) None of the other cases reviewed articulate the appropriate standard of review for such procedural error.

As the case law is inconclusive, we must look to the policies underlying section 1203's requirement of an on-the-record statement in order to determine the effect of error in omitting such a statement. The obvious reason for mandating that the sentencing judge attest on the record that he or she has considered the RPO is to ensure that the report is read and considered prior to sentencing.

■ As explained in *People* v. *Edwards* (1976) 18 Cal.3d 796, 801 [135 Cal.Rptr. 411, 557 P.2d 995], "The primary function served by the

probation report required by section 1203 is to assist the court in determining an appropriate disposition after conviction." (Fn. omitted; see also *People* v. *Valdivia* (1960) 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832].) "The court is provided with a report of the probation officer containing information of the defendant's background, his prior involvements, if any, with law enforcement agencies, his propensities and dispositions, his future plans if probation is granted, and the judge is required to verify that he has read and considered such report which often contains communications both favorable and unfavorable to defendant." (*Edwards, supra,* 18 Cal.3d at p. 803.) "The statutory responsibility of sentencing courts to order preparation of probation reports and attest to having read and considered the contents of such reports carries with it the responsibility . . . to consider thoughtfully and seriously a grant of probation if the judge determines that there exist 'circumstances in mitigation of the punishment prescribed by law or that the ends of justice would be subserved . . . .' (§ 1203, subd. (a).)" (*Id.* at pp. 800-801.)

It is manifest that the purpose of obtaining an RPO is defeated if the report is not read and considered by the sentencing judge; thus the statute requires the judge's verification that he or she has done so. "To exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision." (*People* v. *Surplice* (1962) 203 Cal.App.2d 784, 791 [21 Cal.Rptr. 826].) Because consideration of the RPO is prerequisite to the court's exercise of an informed discretion, application of a *Watson* standard (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) assessing the likelihood that probation would have been granted absent the error does not seem appropriate where the court has omitted to certify under section 1203 that it has considered the RPO. Somewhat analogous are cases discussing the effect of a court's failure to order a *current* RPO. As this is an important procedural right, where such a report is required, failure to obtain one is generally treated as reversible error (*People* v. *Rojas, supra,* 57 Cal.2d 676; *People* v. *Cooper, supra,* 153 Cal.App.3d 480, 483-484; *People* v. *Mariano* (1983) 144 Cal.App.3d 814, 824-825 [193 Cal.Rptr. 47]), even where counsel indicated that he had nothing new to offer beyond his oral argument (*People* v. *Causey* (1964) 230 Cal.App.2d 576, 579-580 [41 Cal.Rptr. 116]).

Unlike the total absence of a current report, however, a failure to formally certify does not necessarily indicate that the court has not read and considered the RPO as required by law. ▋ We believe the purpose of the certification required by section 1203, subdivision (b), is sufficiently served and remand is not required if the record otherwise clearly shows that the court has read the RPO or has considered the information provided in

it. Although we eschew a per se rule, in light of the difficulty in determining circumstantially whether a judge has read and considered the RPO, it will be a rare case in which a remand can be avoided absent a written or oral section 1203, subdivision (b) statement.

We turn now to the record to determine whether it adequately shows the sentencing court considered the supplemental RPO. We find nothing in the record that establishes the court did in fact read the supplemental RPO. Unlike the trial court in *People* v. *Fabela, supra,* 272 Cal.App.2d 122, 127, the judge in this matter did not quote or expressly refer to the report at any point in the sentencing hearing. On the other hand, defense counsel's remarks at sentencing, quoted above, fairly summarized the findings and recommendation of the supplemental RPO, which was quite brief and contained little new information. In the peculiar circumstances of this case, we conclude that remand is unnecessary because the record shows the court was aware of the contents and recommendation of the supplemental RPO.

## II.-III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Ballantyne, J., and Pettitt, J.†, concurred.

---

*See footnote, *ante,* page 498.

†Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.