Filed 10/19/15  P. v. Leon CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARMANDO LEON,<br><br>    Defendant and Appellant. | 2d Crim. No. B253707<br>(Super. Ct. No. BA408102)<br>(Los Angeles County) |

Appellant was charged with arson of a structure.  (Pen. Code, § 451, subd. (b).)[1]  He moved for discovery of any misconduct complaints against the 11 arresting officers pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).  The trial court denied the *Pitchess* motion and a subsequent *Marsden*[2] motion but granted appellant's request to represent himself.  Subsequently, the People amended the information to add a charge of resisting an executive officer in the performance of his duties.  (§ 69.)

A jury convicted appellant on both counts.  The trial court sentenced him on the arson count to five years in prison.  For resisting an

---

[1] All further statutory references are to the Penal Code.

[2] (*People v. Marsden* (1970) 2 Cal.3d 118.)

executive officer, the court imposed a concurrent 16-month sentence, which it stayed. (§ 654.) It awarded him 376 days of presentence custody credit.

Appellant contends that the trial court erred by (1) denying his *Pitchess* motion; (2) pronouncing sentence without considering the probation report; and (3) not ordering a post-conviction probation report. We affirm.

## FACTS

One evening, appellant went to his father's house. He did not live there but would go to bathe and use the bathroom. He had been behaving erratically—excited and agitated—all week. His father was concerned that he was under the influence of PCP.

Appellant became very angry about a broken car key. He confronted his father in the kitchen, picked up a pan with food in it, and threw it on the floor. Javier, appellant's brother, held him back while his father went to the living room and picked up the phone. Appellant broke free, took the phone from his father, and threw it on the ground. His father attempted to exit the house and walk away while Javier held him back, but appellant broke free and dragged his father back inside against his will. With the assistance of two friends who were outside, Javier kept him at bay while his father walked off.

Several police officers responded to a 911 call about a "415 man"—an aggressive and combative person, possibly under the influence of PCP.[3] They found appellant behind one of the cars in his father's driveway. When the officers started to approach him, he ran through a doorway leading from the driveway to an unfinished basement. The basement was not connected to the rest of the house, and the doorway was the only way in or out.

---

[3] Section 415 punishes unlawful fighting in public, disturbing others with loud and unreasonable noise, and publicly using offensive words likely to provoke an immediate violent reaction.

The officers identified themselves to appellant and several times advised him to surrender by coming out with his hands up. Appellant responded with expletives in a loud and aggressive tone of voice.

Appellant's behavior escalated dramatically. At first, he tried to barricade himself in the basement by placing rocks in the doorway to prevent the police from entering or seeing inside. As the police used various tactics to demolish the barricade, appellant began throwing rocks, gravel, dirt, glass bottles, and other debris through the entryway and swung a shovel and garden hoe at officers to keep them at a distance. One time he showed the police a large knife. Another time he pointed a small crossbow at them.

Eventually, appellant started to use a propane tank as a flame thrower. He shot six-foot jets of flame at the officers from inside the basement and ignited various objects, such as wadded up paper towels or pieces of paper, and threw them in the officers' direction. The flames set the basement on fire, causing a great deal of smoke to come out and activating the fire alarm inside the house.

The police unsuccessfully attempted to negotiate with appellant. In addition, they used a taser and beanbag shotgun on him, which had no effect. They called a SWAT team and the fire department. From a safe distance, the firefighters were able to extinguish the flames.

When the SWAT team arrived, they threw two tear gas canisters into the basement. Appellant remained there. The SWAT team then deployed a K-9 on a long leash. Appellant hit the dog in the face with the shovel three or four times, causing it to yelp, and the dog was pulled out. Appellant continued throwing various things at the officers, striking two with rocks. After a few hours, the SWAT team cut a second opening into the basement through which they tased him. He stopped momentarily, tried to pull the darts out, and continued resisting. When he moved towards the doorway, officers pulled him through and were then able to handcuff him and take him into custody.

3

*Pitchess Motion*

Appellant contends that the trial court erred by denying his *Pitchess* motion. We review for abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.) As we shall explain, in order to grant the in camera review, the trial court would have had to engage in "the willing suspension of disbelief." By any measure, appellant's purported alternative scenario asks this court to apply not the "relaxed standards" required for a showing of good cause, but collapsed standards or no standards at all. We decline the invitation. Appellant's contention that 11 police officers engaged in the premeditated and ad hoc calumny attributed to them defies reason and logic. His claim also ignores the 911 call that summoned them, the confrontation and fire that ensued, and the response of firefighters to the scene. His is not a plausible scenario.

"'[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both "'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." [Citation.] A showing of good cause is measured by "relatively relaxed standards" that serve to "insure the production" for trial court review of "all potentially relevant documents." [Citation.]' [Citation.]

"The defendant does not need to corroborate or show motivation for the alleged officer misconduct, but must provide '"a plausible scenario . . . that might or could have occurred." [Citation.] A scenario is plausible when it asserts specific misconduct that is both internally consistent and supports the proposed defense. [Citation.]' [Citation.]

"'[D]efendant need demonstrate only "a logical link between the *defense* proposed and the pending charge" and describe with some specificity "how the discovery being sought would support such a defense or how it would impeach the officer's version of events." [Citation.]' [Citation.] The inquiry does not involve 'an assessment or weighing of the persuasive value of the evidence . . . presented [or] which should have been presented. [Citations.] Indeed, a defendant is entitled to discover relevant information under *Pitchess* even in the absence of any judicial determination that the potential defense is credible or persuasive.' [Citation.] 'If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.]' [Citation.]" (*People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1339-1340.)

Here, appellant sought in camera review and discovery of a smorgasbord of "[a]ll complaints . . . relating to acts of aggressive behavior, violence, excessive force, or attempted violence or excessive [*sic*], racial bias, gender bias, ethnic bias, sexual orientation bias, coercive conduct, violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure; false arrest, perjury, dishonesty, writing of false police reports . . . , planting of evidence, false or misleading internal reports including but not limited to false overtime or medical reports, and any other evidence of misconduct amounting to moral turpitude" against the 11 arresting officers. Appellant explained the materiality of the requested discovery as follows:

"Hollenbeck Police Officers responded to [appellant's father's house] regarding an alleged family disturbance. When the officers arrived, [appellant] was in the front yard doing nothing significant. Suddenly, the officers began firing rubber bullets at [him] for no reason. To protect himself, [appellant] dove into the nearest cover space to shield his body. The area where he dove into was the crawlspace underneath his father's home. Once in the crawl

5

space, [he] threw dirt to block himself from the officers' view. [He] never threw rocks, bottles or other items at the officers, as they claim.

"While under the home to avoid the unwarranted attacks by the officers, [appellant] never lit any fire and never even had any propane gas, as claimed by all of the involved officers. In fact, [four of the officers] continually deployed tasers at [his] stomach and legs; and [three other officers] continually fired bean bags at [his] abdomen. Furthermore, [another officer] had an HK 416 Patrol Rifle and a bean bag shotgun, which he fired at [appellant] several times, while [two other officers] fired gas projectiles (tear gas) into the crawl space and deployed a K-9 to attack [him]. Finally, [the remaining officer] assisted in [appellant's] arrest . . . , in which [he] was hit, kicked and beaten by the arrest team.

"These officers individually and collectively used excessive force on [appellant] and filed false police reports to cover-up their abuse. The force that they used on [him] was unnecessary in light of the non-violent behavior that he exhibited."

Appellant's scenario is not plausible. "[He] does not provide an alternate version of the facts regarding his presence and his actions prior to and at the time of his arrest. He does not explain the facts set forth in the police report. In essence, his declaration claims that the entire incident was fabricated and, by inference, that the police officers conspired to do so in advance." (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318 (*Thompson*).)

Appellant likens this case to *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, but in that case "the defendant did not merely make bald assertions that denied the elements of the charged crime. He provided an alternate version of the events that was plausible, if not entirely convincing. The defendant presented a 'specific factual scenario' that explained his presence in the area, his running from the police, and a reason for the police to conclude that he had discarded the rock cocaine they recovered. And, the scenario supplied, at least

6

by inference, an explanation for the cocaine being on the ground, namely that others had discarded it to avoid arrest." (*Thompson*, *supra*, 141 Cal.App.4th at p. 1318.)

Here, in contrast, appellant's story is neither internally consistent nor supportive of any defense. He does not explain why jets of fire were shooting out of the basement if he was not responsible or, if there was no fire, why there was fire damage to the basement after the incident, why the fire alarm in the house above was activated, why the fire department needed to be dispatched, and why the firefighters—whom appellant does not claim were conspiring against him—reported seeing smoke, flames, and blazing objects coming out of the basement. His allegations of excessive force were irrelevant to the arson charge, the only one pending at the time of his *Pitchess* motion, because he did not assert that the police used deadly force against him. He was not justified in responding with deadly force if, notwithstanding his denials, the jury believed he propelled fire at the officers. The trial court did not abuse its discretion.

*Consideration of the Probation Report*

Before judgment is pronounced, "the court shall consider any report of the probation officer . . . and shall make a statement that it has considered the report." (§ 1203, subd. (b)(3).) Appellant contends that the trial court violated this provision and federal due process by failing to state on the record that it had considered the probation report. He asks us to vacate his sentence and remand for resentencing.

Because "there is nothing in the record indicating any reluctance on [appellant's] part to proceed without the report, and no indication that [he] believed there were additional facts to be presented to the court that might have influenced the court's decision," his failure to object in the trial court forfeits the issue here. (*People v. Oseguera* (1993) 20 Cal.App.4th 290, 294.) "Simple

7

errors of state law do not implicate federal due process guarantees. [Citation.]" (*People v. Henning* (2009) 178 Cal.App.4th 388, 398.)

Moreover, the trial court's error in failing to state that it had considered the probation report was harmless. The trial court's minute order states that it "read and considered the defendant's probation report." Both appellant and the prosecutor discussed the most relevant information from the report at the sentencing hearing. The prosecutor noted that appellant had a lengthy criminal history in arguing that probation was inappropriate. Appellant "partially object[ed]" that the report failed to reflect certain circumstances in mitigation and stressed its recommendation that he receive a suspended sentence and probation. Unlike the total absence of a current probation report, the trial court's failure to state on the record that that it has read and considered the report does not necessarily indicate a failure to do so. (*People v. Gorley* (1988) 203 Cal.App.3d 498, 506.) The statutory purpose "is sufficiently served and remand is not required if the record otherwise clearly shows that the court has read the [probation report] or has considered the information provided in it." (*Id.*, at pp. 506-507.)

*Claimed Failure to Order a Post-Conviction Probation Report*

Appellant also contends that this matter should be remanded because the probation report was prepared before he was convicted and the trial court failed to order an updated report afterwards. This contention is similarly forfeited. (*People v. Johnson* (1999) 70 Cal.App.4th 1429, 1431.) His partial objection to aspects of the pre-conviction report did not put the trial court on notice that he wanted a post-conviction report prepared.

Regardless, there was no error. A new probation report is necessary only "for sentencing proceedings that occur a significant period of time after the original report was prepared" or if there is an "indication of changed

8

circumstances."[4]  (Cal. Rules of Court, rule 4.411(c) & Advisory Com. com. foll. rule 4.411.)  That was not the case here.  The pre-conviction report was prepared about 10 months before sentencing, and appellant was "under the watchful eyes of custodial authorities" the entire time.  (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 181.)

Appellant fails to identify any relevant new information that should have been included in a post-conviction probation report.  He admits that the "unusual circumstances" making him eligible for probation were "[found] in the pre-conviction report."  He filed a pre-sentencing memorandum in which he provided details of his personal background, including his work history and prospects, admitted he "made a big mistake" by resisting arrest, apologized for his "role," but maintained his innocence.  He submitted several letters from various individuals supporting him.  The trial court expressly considered all of this in addition to his and his father's pleas at the hearing for leniency and a chance for him to enter a drug treatment program.

Even if there were error, it was harmless.  This was not a case in which the trial court appeared unaware of the scope of its sentencing discretion. (E.g., *People v. Rodriguez* (1998) 17 Cal.4th 253, 257 ["[W]here the record *affirmatively* discloses that the trial court *misunderstood* the scope of its discretion, remand to the trial court is required"].)  Not only did appellant remind

---

[4] Appellant attempts to distinguish between an "updated" or "supplemental" report—which he disclaims seeking—and the "post-conviction" report to which he asserts entitlement.  There is no such distinction.  The statute provides that "*if* a person is convicted of a felony and is eligible for probation," a probation report must be prepared "before judgment is pronounced."  (§ 1203, subd. (b)(1), italics added.)  It does not purport to limit *when* (other than before judgment) the report can be prepared.  Appellant argues that "[a] different section, 1203.7, dictates the preparation of a *pre*-conviction report."  But that section merely requires that the probation officer prepare the report "when so directed by the court," which can be "[e]ither at the time of the arrest . . . or at the time of the plea or verdict of guilty" (§ 1203.7, subd. (a)), i.e., either pre-conviction or post-conviction.

the court that the probation report recommended probation, but prior to trial the court itself offered to sentence him to probation if he entered an open plea of guilty. Thereafter the court heard a full exposition of the facts and circumstances of the case in the trial that unfolded. The information available to the court that it knew and considered was far greater than that which was contained in the probation report.[5] The trial court fully understood its discretion and made an informed decision to impose a prison term rather than probation. Nothing more was required.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

---

[5] The court has read the probation officer's report prepared March 25, 2013. There is virtually nothing contained in that report which was not recounted in far greater detail at trial or otherwise provided to the trial court at the time judgment was pronounced.

10

Drew E. Edwards, Judge

Superior Court County of Los Angeles

_____

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and William N. Frank, Deputy Attorney General, for Plaintiff and Respondent.